UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| DOROTHY SCHREINER, | |
| Plaintiff, | |
| v. | Civ. Action No. 04-6208 (KSH) |
| NORDSTROM, INC., | |
| Defendant. | **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

I. INTRODUCTION

On November 8, 2004, plaintiff Dorothy Schreiner ("Schreiner") filed a complaint against her former employer, Nordstrom, Inc. ("Nordstrom"), in state court, alleging a single cause of action: that she was terminated on the basis of her age in violation of the New Jersey Law Against Discrimination ("NJLAD"). Nordstrom removed the case to this Court on December 17, 2004 pursuant to 28 U.S.C. §§ 1441(a) and 1446. The matter presently pending before the Court is Nordstrom's motion for summary judgment. For the reasons discussed below, Nordstrom's motion is **denied**.

II. BACKGROUND

The following factual background is established by the record, consisting of the pleadings, plaintiff's deposition, depositions of several current and former Nordstrom employees, defendant's answers to plaintiff's interrogatories (hereinafter "Keegan Decl. at Exs. 12-13"), the declarations

and attached exhibits submitted by the parties, the parties' statements of material facts submitted pursuant to L. Civ. R. 56.1, and the final joint pretrial order. The current and former Nordstrom employees deposed include: (1) Angela Zimmerli, Store Manager at the time of Schreiner's termination; (2) Albert Soto, the Nordstrom employee who interviewed Schreiner on July 12, 2003; (3) Cecil Castillo, the Nordstrom employee who investigated Schreiner's sales and return ringing procedures; and (4) Darene DePasquale, Schreiner's Department Manager at the time of her termination. The exhibits submitted by the parties include the following: (1) a copy of a Nordstrom receipt for a sale processed by Schreiner on June 24, 2003 (hereinafter "Keegan Decl. at Ex. 9"); (2) a copy of a customer receipt for a return processed by Schreiner on June 30, 2003 (hereinafter "Keegan Decl. at Ex. 10"); (3) a narrative written by Albert Soto memorializing the substance of his interview of Schreiner (hereinafter "Keegan Decl. at Ex. 10"); (4) a Nordstrom memo dated May 5, 2003 (hereinafter "Resnick Decl. at Ex. J"); and (5) a Nordstrom Northeast Region Internal Investigation Report dated July 12, 2003 (hereinafter "Resnick Decl. at Ex. K").

Schreiner worked as a sales associate at Nordstrom's retail store in Edison, New Jersey from 1991 until she was terminated on July 12, 2003. She was compensated on a commission basis, but Nordstrom guaranteed her a minimum hourly salary. (Zimmerli Dep. at 15:17-16:1.) Her commission, like the commissions of all other Nordstrom sales associates, was calculated as a percentage of gross sales, minus customer returns of those sales. (Id.) Nordstrom claims that the reason Schreiner was fired was that she committed fraud by processing customer returns in a manner that artificially inflated her commission. Schreiner, who was 69 years old at the time she was fired, claims that the real reason was that she did not fit into Nordstrom's plan to transform itself into a younger, more hip retailer.

Nordstrom maintains an elaborate tracking method to ensure that employees are not paid a commission on items that are later returned, which Schreiner described at her deposition. Each sales associate is given a unique employee identification number. (Schreiner Dep. at 111:4-15.) When the employee rings up merchandise, s/he must input this employee identification number into the cash register in order to be given credit for the sale. (Id. at 115:5-17.) The register automatically prints up a small sticker, called a "shank," which indicates the selling employee's identification number, the store from which the merchandise was sold, and the register number. (Id. at 113:12-115:13.) The employee is supposed to attach the shank to the merchandise tag. (Id.) The sales receipt also contains the same information. (Id.) If a customer subsequently returns an item, the sales associate handling the return is required to manually input into the cash register the selling employee's identification number, located on either the shank or the receipt, so that the selling employee's commission is properly reduced for the returned merchandise. (Id. at 115:19-116:20.)

According to Nordstrom employees who were deposed, Nordstrom maintains a Loss Prevention ("LP") Department to investigate all types of losses created by employees, including losses caused by commission fraud. (Soto Dep. 6:3-25; Castillo Dep. at 34:12-23.) One type of commission fraud occurs when an associate who sells an item enters "000" instead of his/her employee identification number when processing a return of that same item. By doing this, the sales associate avoids the tracking process for the return and escapes a reduction in commission.

Nordstrom claims that its LP Department began investigating Schreiner's return practices after her name appeared on a commission fraud indicator report. (Castillo Dep. at 34:17-23.) As part of its investigation, the LP Department conducted an "integrity shop" to determine if Schreiner was following proper protocol for processing returns. (Soto Dep. at 36:2-10.) A shopper selected

-3-


by Nordstrom purchased an item from Schreiner on June 24, 2003.  (Keegan Decl. at Ex. 9.) Schreiner properly rang the item up with her employee identification number and handed the shopper a receipt.  (Id.)  Six days later, the shopper returned the merchandise for a refund and provided Schreiner with the original receipt.   (Soto Dep. at 36:2-10.)  However, instead of entering her employee identification number into the register when prompted for the selling sales associate's identification number, she inputted "000."  (Keegan Decl. at Ex. 10.)   Schreiner also inputted the incorrect store number.  (Id.)  All of this was recorded on video.  (Soto Dep. at 35:22-36:10.)

On July 12, 2003, an LP investigator interviewed Schreiner about the integrity shop.  (Soto Dep. at 28:2-24.)  Schreiner recited the proper procedures for processing a return and noted that it would only be appropriate for a sales associate to enter "000" when processing a return if the customer did not have a receipt and the shank had been removed from the merchandise.  (Keegan Decl. at Ex. 11.)  After reviewing the information provided to her, Schreiner acknowledged that she rang the shopper's return to "000" instead of her own employee identification number, but stated that she did not recall the specific transaction.  (Id.)  Schreiner told the investigator that she must have made an unintentional error.  (Id.)  After interviewing Schreiner, the LP investigator discussed the substance of the interview with the Store Manager, Angie Zimmerli ("Zimmerli").  (Id.)  After learning what had occurred, Zimmerli determined that she had no choice but to terminate Schreiner's employment.  (Zimmerli Dep. at 46:3-19.)

Nordstrom vigorously argues that its decision to terminate Schreiner was based entirely on her defrauding the company and that it had nothing to do with her age. According to Nordstrom, *all* employees who are found to have engaged in commission fraud are automatically terminated (Soto

-4-

Dep. at 64:2-10), and from January 2000 to June 2005, it terminated 35 employees, ranging in age from 18 to 69 years old, from its Edison, New Jersey store for commission fraud. (Keegan Decl. at Exs. 12-13.)

**III.    STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the Court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). An issue is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Conrail, 297 F.3d 242, 247 (3d Cir. 2002). At the summary judgment stage, the Court may not weigh the evidence or make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).

Because this is a diversity case, the Court must apply New Jersey law as established by the New Jersey Supreme Court. Borman v. Raymark Industries, Inc., 960 F.2d 327, 331 (3d Cir. 1992).

**IV.    DISCUSSION**

Schreiner invokes the protections of N.J.S.A. §§ 10:5-4 and 10:5-12, the two sections of NJLAD that prohibit employment discrimination on the basis of age. N.J.S.A. § 10:5-4 declares:

> All persons shall have the opportunity to obtain employment . . . without discrimination because of . . . age . . . , subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.

N.J.S.A. § 10:5-12 provides:

> It shall be an unlawful employment practice . . . [f]or an employer, because of the . . . age . . . of any individual . . . , to refuse to hire or employ or to bar or to discharge or require to retire . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. . . .

In deciding cases under NJLAD, New Jersey courts generally utilize the same framework developed by the federal courts to interpret Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. Bergen Commercial Bank v. Sisler, 157 N.J. 188, 200 (1999). It is well-settled that a plaintiff may attempt to prove employment discrimination through this framework using either direct or circumstantial evidence. Id. at 208.

In cases such as this which rely entirely on circumstantial evidence, the employee must establish discriminatory intent using the three-part burden-shifting framework developed by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The employee must first establish a *prima facie* case of discrimination by establishing that (1) she is over 40 years old; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination. Lawrence v. Nat'l Westminster Bank of New Jersey, 98 F.3d 61, 65-66 (3d Cir. 1996). If plaintiff makes out a *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Id. at 66. If the defendant is able to meet this "rather light burden," Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004), the plaintiff must adduce evidence that the employer's proffered reason for termination was not its actual reason, but was instead a pretext for age discrimination. Lawrence, 98 F.3d at 66 & n.3. A plaintiff can withstand the employer's motion for summary judgment either: "(1) by

discrediting the proffered reasons for termination, directly or circumstantially, or (2) by adducing evidence that discrimination was more likely than not a motivating or determinative cause of the adverse action." Id. The Third Circuit has indicated that "summary judgment is rarely appropriate" in employment cases where the plaintiff raises evidence that calls into question the defendant's intent in undertaking the adverse employment action. Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 509-10 (3d Cir. 1996). "Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.'" Id. (quoting Sempier v. Johnson & Higgins, 45 F.3d 724, 732-33 (3d Cir. 1995).

For purposes of this motion, Nordstrom concedes that Schreiner has established a *prima facie* case of discrimination. Moving to the second prong, Nordstrom claims that it terminated Schreiner's employment because she had committed commission fraud. Although Schreiner argues that this is not a legitimate, non-discriminatory reason for termination, the Court disagrees. The Third Circuit has stated that the employer's burden is "rather light," Monaco, 359 F.3d at 300, and Nordstrom's claim that Schreiner defrauded the company easily satisfies this burden. Therefore, the sole remaining issue to be decided is whether Schreiner has produced sufficient record evidence for a reasonable jury to either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

To support her claim that she was fired because of her age, Schreiner has offered the following evidence: (1) her guaranteed pay rate was dropped from $10.00 to $9.00 per hour four months before her termination, even though she was regularly making her draw (Schreiner Dep. at

-7-

104:2-17); (2) Zimmerli had never heard of Nordstrom reducing another sales associate's guaranteed hourly salary (Zimmerli Dep. at 21:4-22:1); (3) Schreiner observed the entire store was becoming younger in the merchandise it sold, the music being played in the store, and in appearance through the presentation and location of the departments, and the age of the sales associates (Schreiner Dep. at 46:16-47:23); (4) her department manager at the time she was terminated, Darene DePasquale, had never heard of anyone that was disciplined, let alone fired, for entering "000" when processing a return (DePasquale Dep. at 61:25-62:13); (5) less than one year before Nordstrom fired her, new registers were installed in the store which Schreiner found somewhat confusing to use (Schreiner Dep. at 110:21-24) ; (6) at 69 years old, she was the oldest employee in her department at the time she was terminated (Def.'s Moving Br. at 23);(7) the *de minimis* nature of her alleged commission fraud, which only would have netted her $3.38 (Resnick Decl. at Ex. K); and (8) language in a Nordstrom memo dated May 5, 2003 which suggests that termination was only one of several disciplinary options that employees would face if caught engaging in commission fraud (Resnick Decl. at Ex. J).

Nordstrom argues that its evidence in support of its charge of commission fraud is strong, and constitutes a believable nondiscriminatory reason for termination. But courts are reluctant to dismiss in the face of evidence such as Schreiner has adduced, which supports a mixed-motive analysis from which a reasonable juror could conclude that age, as opposed to alleged commission fraud, was the motivating factor in Nordstrom's decision to discharge her. It is for the fact-finding jury, and not the Court, to weigh the evidence and determine credibility and decide whether the

employer's charge of commission fraud as opposed to age bias motivated the adverse decision.  As such, Nordstrom's motion cannot succeed.

## V.  CONCLUSION

For the foregoing reasons, Nordstrom's motion for summary judgment is **denied**.


Dated: December 4, 2006                             /s/ Katharine S. Hayden

                                                                     Katharine S. Hayden, U.S.D.J.